PER CURIAM.
There was a traffic mishap as a result of which James W. Robinson suffered personal injuries. He sued charging negligence. The jury verdict and judgment entered thereon were adverse to him. He appeals. Error being reflected, we reverse for a new trial.
Robinson had been convicted of a crime about ten years prior to trial. His counsel voluntarily made this fact known at pre-trial conference. Also, Robinson’s lawyer, with prophetic vision and as a matter of notice and commendable preparation, distributed at that time photographic copies of the Florida Supreme Court opinion reported as McArthur v. Cook, Fla.1957, 99 So.2d 565. Contained therein are the specifics and the limitations as to the procedure to be employed by counsel in bringing into evidence, as an attack upon credibility, the fact that a witness had been convicted of a crime. We extract the exact guidelines from page 567:
“In view of our holding that the rule as to impeaching the credibility of a witness because of conviction of a crime is equally applicable in civil and criminal cases, we think the decision in Mead v. State, Fla.1956, 86 So.2d 773, is helpfuL It was there pointed out that evidence o£ conviction of a crime might influence the' jury in evaluating the credibility of the witness involved. We there further em-phasised that the proper procedural approach is simply to ask the witness the straight-forward question as to whether he had ever been convicted of a crime. The inquiry must end at this point unless the witness denies that he has been convicted. In the event of such denial the adverse party may then in the presentation of his side of the case produce and file in evidence the record of any such conviction. If the witness admits prior conviction of a crime, the inquiry by his adversary may not be pursued to the point of naming the crime for which he was convicted. If the witness so desires he may of his own volition state the nature of the crime and offer any relevant testimony that would eliminate any adverse implications; for example, the fact that he had in the meantime been fully pardoned or that the crime was a minor one and occurred many years before. The restrictions on the use of this type of interrogation to reflect adversely on the credibility of a witness have been well illustrated by other cases. It would be repetitious to elaborate on this phase of the matter here. * * * ” (Citations omitted; emphasis added.)
See also Hendrick v. Strazzulla, Fla.1961, 135 So.2d 1, and 15 U.Fla.L.Rev. 220.
We adapt and adopt certain language appearing in the case of Johnny Roberts, Inc. v. Owens, Fla.App.1964, 168 So.2d 89, at 95, as reflective of the responsibilities imposed by the disclosed fact:
“As in any other instance involving controversial matters of procedure, counsel for both plaintiff and defendant have *44 the right, as well as the duty, to inform the trial court in advance of trial that inquiry will be made (of jurors concerning insurance). When all interested parties have been put on notice then each of them, plaintiff’s attorney, defendant’s attorney, and the trial court, can be held to ■strict accountability for any infraction or abuse; and the appellate court will then be in better position to detect reversible error.” (Parenthesis inserted.)
The following extracts from the record bespeak the basis for this court’s concern:
“Q Have your civil rights been returned to you as yet?
•“A Yes, sir.
f“Q When was that?
“A Couple, three months ago.
“Q You have been convicted of a felony, have you not, sir ?
“A Yes, sir.
“Q And what was your occupation immediately prior to coming to Orlando ?
“A Department of Public Safety, I was employed at.
“Q Well, immediately’ before coming here, were you not an inmate?
'“A Yes, sir.
“MR. HORNSBY: Your Honor, I am ■going to object to going any further into that. This is solely an attempt to prejudice the jury against this man. We are simply here to try a lawsuit, not his whole private history. The ■statute is clear he can only ask that ■one .question. The man answered truthfully. I ask the Court to instruct ■counsel to cease and desist such conduct.
'“(Argument not transcribed)
“THE COURT: I don’t think I have anything to rule on. The question was asked and answered.
“MR. HORNSBY: I move to strike his answer from the record.
“THE COURT: That will be denied as coming too late. There is no objection to the question.” (Tr. 274 — 276)
“Q I believe you were on the Police Department when you were convicted of a felony, were you not?
“A Yes, sir.
“Q Or you had been during the commission of the act?
“A Yes, sir.” (Tr. 277)
“Q Have you had any difficulty with being arrested for intoxication or worthless checks?
“A No, sir.
“Q You know how many James Robin-sons there are?
“A Yes, sir.
“Q Would there be another James Robinson ?
“A There’s two of them here, to my knowledge.
“Q Well, you are James W.?
“A James W. Robinson.
“Q And did you reside in Dade County until around October of 1956?
“A I did.
“Q You’re that James W. Robinson?
“A I am James W. Robinson who resided there until approximately that time; and I am here now.
“Q When did you come to Orange County ?
“A ’57.
“Q Was that after your sentence?
“A Yes, sir.
*45 “Q Or that portion of it that you were required to serve.?
"A Yes, sir. When I came here it was ’57.
“Q Is this known here in this community, sir?
“MR. HORNSBY: I object to this line of inquiry. He’s been aware of this. I ask the Court to reprimand counsel. He was given a copy of this case at pre-trial conference. I would like to take it up out of the presence of the jury, if I might, Your Honor.”
(Tr. 316-317)
(Extract from the closing argument by defendant’s counsel.)
“They put his wife on the stand before they put him on, and I had to inquire of her concerning the fact that the man had been in prison. I had to inquire of her concerning the fact that he had been away there, had been incarcerated. I didn’t put him in jail. The defendant here didn’t put him in jail. The defendant here wasn’t responsible for his being convicted of a felony while on the police department down in Miami; and the Court allowed that to be gone into, and it is proper evidence.
“And it is incumbent upon me to bring out whatever I can bring out. The Judge ruled I couldn’t go into this lawsuit with Dick Bond. I announced at the beginning of the case there would be impeachment witnesses put on the stand. The Court ruled that matter of litigation concerning his business, we couldn’t go into, so they couldn’t be gone into; and his other litigation — I tell you this. This affects credibility and credibility is be-lievableness and believableness is what we are talking about here. Whether you can believe the man under oath or not.
“When his deposition was taken in this case, his civil rights had not as yet been restored by the State. I didn’t take those civil rights away from him. No siree. He did it himself while a member of the Miami police department. And of all the things that concern you, it is when a person who is charged with the responsibility of maintaining the law, himself, goes sour — a bad cop — I don’t like to have to talk about these things. I didn’t put this in the record. He did it himself when he was convicted, when he did what he was later called upon to answer to by being incarcerated.
“I am as sorry as I can be it occurred. I am sorry that a man would do a thing like that. He is intelligent. You saw that. A big, strong, fine looking man. He didn’t need to do anything like that; and you know that he had the same abilities then that he has got now. And for a person to perform and act in things of that nature, he has to do it himself.
“He wasn’t some kid who did something in his adolescence. He was a grown man charged with the responsibility of maintaining law and order and he himself became a felon and is now a former convict, an ex-convict.”
(Tr. 430-432)
Defendant seems to take the position that the fruits of this conduct should not be withdrawn because plaintiff- did not make sufficient objection. We cannot agree.
Objection was made by plaintiff’s counsel and the matter brought to the court’s attention. With the background and posture of the case, we deem it to have been the trial court’s bounden duty at that time to strike all the testimony that exceeded the bounds of the McArthur case, supra, with appropriate instruction to disregard. See Wicoma Investment Co. v. Pridgeon, 1939, 137 Fla. 540, 188 So. 597, as to timeliness of the motion to strike.
Our review of the record leads us to the view that Robinson was deprived of his right to have the evidence and the merits *46 calmly and dispassionately considered by the jury. See Tyus v. Apalachicola Northern Railroad Company, Fla.1961, 130 So.2d 580.
The judgment is reversed and the case remanded for new trial.
SMITH, C. J., and ICANNER (Ret.), Associate Judge, concur.
WALDEN, J., agrees to the conclusion.